# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Jasper Pellets, LLC.,<br><br>Debtor. | C/A No. 22-01409-EG<br><br>Adv. Pro. No. 22-80045-EG Consolidated with Adv. Pro. No. 23-80033-eg<br><br>Chapter 7 |
| CM Biomass Partners A/S,<br><br>Plaintiff,<br><br>v.<br><br>Michelle L. Vieira, as Chapter 7 Trustee for Jasper Pellets, LLC,<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>U.S. Bank Trust Company, N.A., as Indenture Trustee,<br><br>Third-Party Defendant | **ORDER GRANTING CM BIOMASS PARTNERS A/S'S AMENDED MOTION FOR PARTIAL DISMISSAL OF THE TRUSTEE'S THIRD COUNTERCLAIM** |

**THIS MATTER** is before the Court upon CM Biomass Partners A/S's ("CMB" or "Plaintiff") *Motion for Partial Dismissal of Defendant Michelle L. Vieira, as Chapter 7 Trustee for Jasper Pellets, LLC's Third Counterclaim for Defamation and Incorporated Memorandum of Law in Support* ("Amended Motion for Partial Dismissal"), seeking dismissal with prejudice of the Trustee's Third Counterclaim for defamation (the "Defamation Counterclaim") asserted in her Amended Answer and Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), made applicable herein by Fed. R. Bankr. P. 7012(b).[1] Michelle L. Vieira, the Chapter 7 Trustee for Jasper Pellets, LLC ("Debtor") and the Defendant and Third-

---

[1] ECF No. 42, filed June 8, 2023.

Party Plaintiff in this adversary proceeding (the "Trustee" or "Defendant"), filed an Objection to the Amended Motion for Partial Dismissal.[2] The parties agree the Court has authority to enter a final judgment.[3] For the reasons set forth below, the Court grants the Amended Motion for Partial Dismissal and dismisses the Trustee's Defamation Counterclaim with prejudice.

## SUMMARY OF FACTS

### A. Factual Background of Bankruptcy Case

Debtor, a limited liability company organized under the laws of the State of South Carolina, is the owner of a pellet mill in Ridgeland, South Carolina (the "Pellet Mill"). The company was in the business of manufacturing biomass wood pellets but has ceased operations. Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 27, 2022.

On August 19, 2022, Debtor filed a motion seeking authorization under 11 U.S.C. § 363 to sell substantially all its assets and seeking the approval of bidding procedures to auction them. CMB and Debtor entered into an Asset Purchase Agreement (the "APA") on October 5, 2022, with CMB as the stalking horse purchaser. No parties, other than CMB, submitted qualifying bids. On or about October 20, 2022, Debtor, in consultation with the Committee of Unsecured Creditors appointed in the case, designated CMB as the successful bidder.[4]

The hearing on the sale of the assets was held on October 25, 2022. As alleged in CMB's complaint, on or about October 21, 2022, CMB, through a conversation with Tony

---

[2] ECF No. 50, filed June 22, 2023.
[3] ECF No. 34 at ¶3; ECF No. 35 at ¶5.
[4] C/A No. 22-01409-EG, ECF No. 170.

Nimmer[5] of the neighboring Nimmer Turf Farm, became aware for the first time of significant issues between the Town of Ridgeland and Debtor relating to the operation of the Debtor's facility. When CMB contacted the Town of Ridgeland on October 24, 2022, Dennis Averkin, the Town Administrator for Ridgeland where the Debtor is based, emailed CMB informing them that the plant had not renewed its business license and had not been operating for some time and was thus considered "closed". Accordingly, it would have to start the permitting process all over again and there was no guarantee that a permit would be issued. In the email, Dennis Averkin also made comments regarding the Debtor's prior owners.[6]

CMB's counsel contacted Debtor's counsel and advised that, in communicating with the Town of Ridgeland, an issue had come up regarding the town's noise ordinance. At the scheduled sale hearing on October 25, 2022, Debtor advised the Court that, due to the newly discovered issue regarding the Town of Ridgeland's noise ordinance, it needed additional time to resolve the issue with CMB; as a result, the parties requested a continuance of the sale hearing until November 9, 2022. At the continued hearing, counsel for CMB informed the Court that the APA was terminated pursuant to its terms on November 4, 2022, and a Notice of Termination of Asset Purchase Agreement, along with a copy of the letter dated November 4, 2022 sent to Debtor's officer and Debtor's counsel informing them of the termination, was filed with the Court.[7]

---

[5] As the Court previously found, Nimmer is the son of one of the Debtor's members, Frederick Nimmer, who is deceased. Nimmer is the executor of his father's estate. Debtor's counsel advised that Nimmer is the owner of Nimmer Turf Farm, which has its headquarters directly across from the Debtor's pellet mill property and owns land surrounding the pellet mill. C/A No. 22-01409-EG, ECF No. 254.
[6] ECF No. 1 at ¶ 37.
[7] C/A No. 22-01409-EG, ECF No. 208, filed Nov. 10, 2022.

3

B. **Factual Allegations in Complaint and Counterclaims**

On December 1, 2022, CMB filed a Complaint for Damages and Declaratory Relief (the "Complaint"),[8] commencing this Adversary Proceeding. The Complaint seeks (a) a judgment against defendant finding that Debtor breached the APA, committed various forms of fraud, and engaged in unfair and deceptive trade practices; (b) a declaratory judgment that, due to the various acts, omissions, fraud, and concealment allegedly committed by Debtor, the APA is null and void, CMB's obligations thereunder are extinguished, and the $250,000.00 good faith deposit should be returned to CMB; and (c) an award of compensatory, punitive, and treble damages to CMB in an amount to be determined by the Court. More specifically, the Complaint asserts a total of nine causes of actions against Debtor, including: breach of contract, violation of the South Carolina Unfair Trade Practices Act pursuant to S.C. Code Ann. § 39-5-20, fraud, negligent misrepresentation, fraud in the inducement, breach of contract accompanied by a fraudulent act, fraudulent concealment, unjust enrichment, and declaratory judgment.

On January 3, 2023, Debtor filed an Answer to the Complaint raising twenty defenses and asserting five counterclaims. For the Third Counterclaim, Debtor asserted a cause of action for defamation, alleging CMB made multiple false and defamatory statements regarding both Debtor and the Pellet Mill and repeated false and defamatory statements made by others.[9] As the Fifth Counterclaim, Debtor sought a judgment requiring Plaintiff to pay Debtor's attorney's fees, costs, and expenses based on a provision of the APA awarding such fees and expenses to the prevailing party in an action to interpret the APA's provisions.[10] On

---

[8] ECF No. 1.
[9] ECF No. 5, ¶¶ 200-205.
[10] *Id.* at ¶¶ 209-212.

February 6, 2023, CMB filed a Motion for Partial Dismissal of the Third and Fifth Counterclaims (the "Motion for Partial Dismissal") pursuant to Fed. R. Civ. P. 12(b)(6).[11]

Debtor's bankruptcy case was then converted from Chapter 11 to Chapter 7 on February 15, 2023,[12] and the Trustee was appointed on February 21, 2023 to administer the estate. Following two status conferences, by Consent Order, the Trustee was substituted as the real party in interest in this Adversary Proceeding for Debtor, in its capacity as Defendant and Counterclaimant.[13] Pursuant to a Scheduling Order, the Trustee had until May 31, 2023 to object to the Motion for Partial Dismissal. On May 30, 2023, the Trustee filed an Amended Answer and Amended Counterclaims.[14] The Trustee removed the Fifth Counterclaim (Attorney's Fees, Costs and Expenses), instead pleading the entitlement to such recovery elsewhere in the other counterclaims and prayer for relief. With respect to the Defamation Counterclaim, the Trustee revised it to allege:

> 201. Upon information and belief, CMB repeated false and defamatory statements made or suggested by Averkin regarding the Debtor and the Pellet Mill, as if the statements were true.
>
> 202. These include, but are not limited to:
>    a. Statements that the Debtor does not have the proper permits to operate the Pellet Mill; Statements that a complaint, or complaints, have been filed against the Debtor regarding violation(s) of the Town's noise ordinance;
>    b. Statements that the operation of the Pellet Mill violates the Town's noise ordinance;
>    c. Statements that the Pellet Mill was not turnkey ready; and/or
>    d. Statements that the Debtor has liability to SELC[15] or other environmental agencies for operation without permits and/or causing pollution.

---

[11] ECF No. 12.
[12] C/A No. 22-01409-EG, ECF No. 313.
[13] ECF No. 31, filed May 23, 2023.
[14] ECF No. 35.
[15] This appears to be the Southern Environmental Law Center which is defined as "SELC" in the Complaint. *See* ECF No. 1, ¶ 48.

203. Because CMB made the false and defamatory assertions in connection with its attempted termination of the APA and this lawsuit, Defendant has plausible reason to believe that Plaintiff made these statements to third parties outside the scope of communications between and among the parties to the APA and their counsel, to be ascertained more specifically in the course of discovery;

204. Debtor and Debtor's estate suffered special harm due to the publication by CMB of the defamatory statements, including but not limited to an inability to continue marketing the Pellet Mill for sale without having to disclose that the baseless allegations were made, which would chill any attempted sale, all of which ultimately resulted in the conversion of the case to chapter 7.[16]

### DISCUSSION AND CONCLUSIONS OF LAW

In the Amended Motion for Partial Dismissal, CMB argues that the Defamation Counterclaim should be dismissed for failure to state a plausible claim for relief. More specifically, CMB asserts that Trustee has failed to allege facts to plausibly show that the alleged defamatory statements were published to a third party in that the Defamation Counterclaim fails to, among other things, identify (i) who on behalf of CMB specifically made the allegedly defamatory statements, (ii) to whom the allegedly defamatory statements were made, (iii) when the statements were made, and (iv) where the statements were made. Moreover, CMB argues that the Defamation Counterclaim should be dismissed because the statements at issue are protected by the judicial privilege.

The Trustee objects and argues that the Amended Answer and Amended Counterclaims addressed the deficiencies in the Original Answer and Counterclaim and

---

[16] ECF No. 35.  In the Original Answer (ECF No. 5), the Debtor alleged the following:
    201. CMB has made multiple false and defamatory statements regarding both the Defendant and the Pellet Mill and has repeated false and defamatory statements made by others regarding both the Defendant and the Pellet Mill.
    …
    203. CMB made these statements to third parties.
    204. Defendant suffered special harm due to the publication by CMB of the defamatory statements.

6

sufficiently alleges a cause of action for defamation stating, "there is no question that the Plaintiff made the statements at issue to third parties, as can be ascertained simply by reading the Complaint." The Trustee vaguely asserts that the statements at issue were made "to third parties outside the scope of communications between and among the parties to the APA and their counsel" and argues she "has made sufficient allegations to enable the Trustee to engage in discovery to develop further facts in support of this cause of action." The Trustee further posits that the only question "is whether everyone to whom the statements were made falls within a privileged group" and whether the "judicial privilege" defense applies will be ascertained through discovery. The Court agrees with CMB and, for the reasons set forth in detail below, grants the Amended Motion for Partial Dismissal and dismisses the Defamation Counterclaim with prejudice.

1. **STANDARD OF REVIEW**

A motion filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted.[17] The legal sufficiency of the Plaintiff's Complaint is measured by whether it meets the standards for a pleading set forth in Rule 8,[18] which provides the general rules of pleading, and Rule 12(b)(6), which requires a complaint to state a claim upon which relief can be granted. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 may have previously been interpreted as setting forth a "notice pleading" standard, the Supreme Court has since amplified this standard.

---

[17] Fed. R. Civ. P. 12(b)-(i) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).
[18] Fed. R. Civ. P. 8 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7008.

7

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). While the plausibility standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, it does require a plaintiff to demonstrate more than a "sheer possibility that a defendant has acted unlawfully", *Iqbal*, 556 U.S. at 678. A complaint meets the plausibility standard when it "articulate[s] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 678).

To further explain the plausibility standard, the Supreme Court stated that the pleader must provide more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" as required by Rule 8.

*Giacomelli*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 679). In reviewing claims for failure to state a claim, a court must construe the allegations of the complaint in the light most favorable to the plaintiff.

In limited circumstances when ruling on a Rule 12(b)(6) motion, the Court may consider any affirmative defenses raised by the movant if the factual basis for the defense appears on the face of the plaintiff's complaint:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an

8

> affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint.*" *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added); *accord Desser v. Woods*, 266 Md. 696, 296 A.2d 586, 591 (1972).

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

### 2. ELEMENTS OF CAUSE OF ACTION FOR DEFAMATION

CMB relies upon South Carolina law in the Amended Motion for Partial Dismissal, and the Trustee does not contest its applicability. *See Hughs v. Royal Energy Res., Inc.*, No. 2:20-cv-01566-DCN, 2020 WL 6689132, at *2 (D.S.C. Nov. 12, 2020) (concluding that South Carolina law applied because "the parties confirmed that the alleged defamatory statements were made in South Carolina and that South Carolina law applies to the claims."); *see also Granda v. Old Dominion Freight Line, Inc.*, No. 3:19-3294-JMC-KDW, 2021 WL 4596995, at *12 (D.S.C. July 14, 2021) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) in support of its conclusion that South Carolina law applied to the defamation cause of action). Accordingly, the Court will determine whether the Trustee has stated a claim for defamation under South Carolina law.

To state a cause of action for defamation, the plaintiff must establish by a preponderance of the evidence, that there was (1) a false and defamatory statement by the defendant concerning the counter plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm to the counter plaintiff caused by the publication. *Hughs*, 2020 WL 6689132, at *2 (citing *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497, 506 (1998); *Fleming v. Rose*, 350 S.C. 488,

9

567 S.E.2d 857, 860 (2002)). There are two forms of defamatory communications: libel and slander. While slander is the spoken version of defamation, libel is written or accomplished by actions or conduct. *Lashley v. Spartanburg Methodist Coll.*, No. 7:18-cv-2957-JD-KFM, 2021 WL 8014689, at *26 (D.S.C. Dec. 20, 2021) (citing *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126, 133-34 (1999)), *report and recommendation adopted*, 2022 WL 872604 (D.S.C. Mar. 24, 2022), *aff'd* 66 F.4th 168 (4th Cir. 2023).

The first element of a defamation claim has two parts—first, the plaintiff must allege a false statement[19] was made; second, the plaintiff has to allege the statement was defamatory—that is, a communication which "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Gregg v. Am. Coll. of Med. Genetics and Genomics*, No. 3:22-01218-MGL, 2023 WL 2047504, at *4 (D.S.C. Feb. 16, 2023); *Holtzscheiter*, 506 S.E.2d at 506 (citation omitted). Thus, "[t]he trial court must initially determine if the communication is reasonably capable of conveying a defamatory meaning." *Hughs*, 2020 WL 6689132, at *3 (citing *Holtzscheiter*, 506 S.E.2d at 513). If the defamatory meaning of a message or statement is obvious on its face, the statement is defamatory *per se*; however, if the defamatory meaning is not clear unless the hearer knows the facts or circumstances not contained in the statement itself, then the statement is defamatory *per quod*. *Id*. In cases involving defamation *per quod*, the plaintiff must introduce facts extrinsic to the statement itself to prove its defamatory

---

[19] Under common law, a defamatory statement was presumed to be false, but truth could be asserted as a defense. *Kunst v. Loree*, 424 S.C. 24, 40, 817 S.E.2d 295 (Ct. App. 2008). While CMB has just filed an Amended Motion for Partial Dismissal and not a complete answer, such defense has yet to be asserted by CMB. *See Gregg v. Am. Coll. of Med. Genetics and Genomics*, No. 3:22-01218-MGL, 2023 WL 2047504, at *4 (D.S.C. Feb. 16, 2023) (quoting *A Fisherman's Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 196 (4th Cir. 2002)) ("Truth of the matter or substantial truth is a complete defense to a claim for defamation.").

meaning. *Id.* (quoting *Holtzscheiter*, 506 S.E.2d at 501). Under South Carolina law, a cause of action for defamation is not limited to individuals; a corporation may also maintain an action for defamation injuring it in its business. *Hosp. Care Corp. v. Com. Cas. Ins. Co.*, 194 S.C. 370, 9 S.E.2d 796, 797 (1940) (citations omitted) ("[A]lthough it has no reputation or character in a personal sense and cannot suffer humiliation; so that, in determining whether a publication is defamatory of a corporation, it should be borne in mind that the injury must be one to its business, resulting in pecuniary loss.").

The second element of defamation is met when defamatory matter is communicated, "intentionally or by a negligent act, to a third party—someone other than the person defamed." *Hughs*, 2020 WL 6689132, at *3 (citing *Holtzscheiter*, 506 S.E.2d at 507). However, "[a] complaint that does not 'state with specificity the time, place, medium, and listener of the alleged defamatory statements' fails to state a claim for defamation." *Hughs*, 2020 WL 6689132, at *3 (quoting *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017)). A plaintiff asserting a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 370 (D.S.C. 2016).

"An absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." *Hughs,* 2020 WL 6689132, at *3 (quoting *Crowell v. Herring*, 301 S.C. 424, 392 S.E.2d 464, 467 (Ct. App. 1990)).[20] This privilege is established upon a showing that (1) "the statements were issued as

---

[20] Courts have also held that a statement may be privileged if the following elements are met: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hughs*, 2020 WL 6689132, at *3 (quoting *Manley v. Manley*, 291 S.C. 325, 353 S.E.2d 312, 315 (Ct. App. 1987)).

11

part of a judicial proceeding" and (2) "the alleged defamation is relevant to a matter at issue in the case." *Crowell*, 392 S.E.2d at 467 (citing *Corbin v. Washington Fire and Marine Ins. Co.*, 278 F. Supp. 393 (D.S.C. 1968), *aff'd* 398 F.2d 543 (4th Cir. 1968)). The privilege extends to "statements of judges, parties and witnesses offered in the course of judicial proceedings." *Id.* at 466-67 (citations omitted). "[U]nder South Carolina law, privilege is an affirmative defense." *Gregg*, 2023 WL 2047504, at *5 (citing *Swinton Creek Nursery*, 514 S.E.2d at 134).

In determining the third and fourth elements, an important distinction is whether the defamation is actionable *per se* or not. If a defamation is actionable *per se*, under common law principles the law presumes the defendant acted with common law malice and that the plaintiff suffered general damages; however, if it is not actionable *per se*, the plaintiff must plead and prove common law actual malice and special damages. *Holtzscheiter*, 506 S.E.2d at 501-02 (footnotes and citation omitted). Defamation in the form of libel is actionable *per se*, "'meaning without pleading or proof of special damages.'" *Lashley v. Spartanburg Methodist Coll.*, 2021 WL 8014689, at *26 (quoting *Holtzscheiter*, 506 S.E.2d at 502); *see also Jones v. Wal-Mart/Sam's Club*, No. 8:10–988–JMC–BHH, 2010 WL 5824267, at *3 (D.S.C. Oct. 22, 2010) (citing *Holtzscheiter*, 506 S.E.2d at 511) (in an action for libel, "the law presumes that the defendant acted with common law malice, or 'fault,' and that the plaintiff suffered general damages, such that special ones need not be pled."). On the other hand, slander is actionable *per se* only if it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession.

*Holtzscheiter*, 506 S.E.2d at 502 (citations omitted).  If one of those factors are not present, then the plaintiff needs to plead or prove actual malice.

### 3. THE TRUSTEE HAS FAILED TO SUFFICIENTLY PLEAD THE DEFAMATION COUNTERCLAIM

The Trustee has failed to state a claim for defamation.  In the Defamation Counterclaim, the Trustee alleges CMB repeated false and defamatory statements made or suggested by Dennis Averkin, the Town Administrator for Ridgeland where the Debtor is based, regarding the Debtor and the Pellet Mill, as if the statements were true including that (1) the Debtor does not have the proper permits to operate the Pellet Mill; (2) a complaint, or complaints, have been filed against the Debtor regarding violation(s) of the Town's noise ordinance; (3) the operation of the Pellet Mill violates the Town's noise ordinance; (4) the Pellet Mill was not turnkey ready; and (5) the Debtor has liability to environmental agencies for operating without permits and/or causing pollution.  Given the Trustee's lack of specificity in her Defamation Counterclaim, including whether the statements were spoken or in writing, it is impossible to determine whether the alleged defamation is actionable *per se* or not and thus whether the Trustee is required to demonstrate actual malice and special damages. Even more problematic is the fact that the allegations fail to "state with specificity the time, place, medium, and listener of the alleged defamatory statements" and thus fail to state a claim for defamation.  *Hughs*, 2020 WL 6689132, at *3 (quoting *Cannon*, 2017 WL 591121, at *1). The Trustee admits that she only "has plausible reason to believe that Plaintiff made these statements to third parties outside the scope of communications between and among the parties to the APA and their counsel", and her stated intention to ascertain the details of these statements "more specifically in the course of discovery" is insufficient, as a plaintiff asserting

13

a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton*, 225 F. Supp. 3d at 370. As courts have often concluded, "[a] counter 'defendant cannot be expected to defend against an allegation that [defendant] defamed [plaintiff] by making a statement heard by unknown persons at an unknown place at an unknown time.'" *Id.* (quoting *Doe v. McGowan*, No. 2:16-cv-00777-RMG-MGB, 2017 WL 573619, at *3 (D.S.C. Jan. 5, 2017), *report and recommendation adopted*, 2017 WL 571487 (D.S.C. Feb. 13, 2017)); *see also Campbell v. Int'l Paper Co.*, No. 3:12–cv–03042–JFA, 2013 WL 1874850, at *4 (D.S.C. May 3, 2013) (dismissing defamation claim where statement was simply alleged to have been made "publicly known"); *Odom v. CVS Caremark Corp.*, No. 3:14–456–MGL–SVH, 2014 WL 7733823, at *4 (D.S.C. Dec. 12, 2014) (dismissing defamation claim where complaint alleged that statement was published to "Plaintiff's coworkers, DHEC, and the public at large"); *cf. Bassford v. Bassford*, No. 9:21-cv-02351-DCN, 2021 WL 5358976, at *3 (D.S.C. Nov. 17, 2021) (finding that publication to third party element was met as plaintiff alleged that defendant made the statement in late June 2021 and directed it to Sun Trust).

Defendant relies on future discovery to determine to whom and when the statements relied upon for the Defamation Counterclaim were made. The Trustee alleges that "CMB made the false and defamatory assertions in connection with its attempted termination of the APA and this lawsuit" and "Defendant has plausible reason to believe that Plaintiff made these statements to third parties outside the scope of communications between and among the parties to the APA and their counsel, to be ascertained more specifically in the course of discovery". To date, the only alleged defamatory statements that the Court is aware of or that the parties have admitted to arose in the context of the core bankruptcy proceeding and thus

fall within the protection of the privilege for statements made during and in connection with judicial proceedings. For the foregoing reasons, the Trustee has failed to state a claim for defamation in her Defamation Counterclaim.

### 4. DISMISSAL WITH PREJUDICE

CMB requests that the Trustee's Defamation Counterclaim be dismissed with prejudice. "In general, absent a contrary intention, a dismissal for failure to state a claim is with prejudice," as "'[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.'" *Mueller v. Specialized Loan Servicing, LLC*, 669 F. App'x 644, 644 (4th Cir. 2016) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)); *see also Babakaeva v. PTR Invs., Inc.*, No. 22-1272, 2022 WL 17103767, at *1 (4th Cir. Nov. 22, 2022) (concluding that dismissal of action with prejudice without leave to amend did not constitute reversible error where the record showed that appellants' requests for leave to amend were perfunctory); *Palmetto Design Assocs., Inc. v. B G Framing Co., Inc.*, No. 0:20-cv-04234-JMC, 2021 WL 1227086, at *2 (D.S.C. Apr. 1, 2021) (noting that a dismissal for failure to state a claim is usually with prejudice unless specified otherwise). Whether to dismiss for failure to state a claim with prejudice is within the discretion of the Court. *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985).

Courts have often granted motions to dismiss pursuant to Rule 12(b)(6) without prejudice to facilitate a decision on the merits rather than on pleading technicalities. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (citation omitted) ("Plaintiffs whose actions are dismissed are free to subsequently move for leave to amend pursuant to Federal Rule of Civil Procedure 15(b) even if the dismissal is with prejudice.").

Allowing a party to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2), however, is not without boundaries:

> Federal Rule of Civil Procedure 15(a)(2) provides a court with wide discretion to grant a motion to amend when "justice so requires." That discretion, however, is not unlimited: a court should deny such a motion, inter alia, if the amendment would be futile or would prejudice the opposing party. *See Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). Generally, a proposed amendment will unduly prejudice the nonmoving party if it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 ([4th Cir.] 1986).

*Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, No. 20-2319, 2022 WL 12324609, at *6 (4th Cir. Oct. 21, 2022); *see also North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004).

In this case, the Trustee inherited the Debtor's defenses and counterclaims when the case was converted from Chapter 11 to Chapter 7 and was substituted as the real party in interest herein. The Trustee then amended the Answer to Complaint, including the Defamation Counterclaim. Thus, she has already had an opportunity to amend the Defamation Counterclaim knowing that CMB had already filed a motion to dismiss for failure to sufficiently plead the cause of action. There is no indication that if the Trustee were given another bite at the apple, she would be able to correct the deficiencies plaguing the Defamation Counterclaim until after discovery is concluded. The record does not support a finding that any additional amendment would be futile or unduly prejudice CMB; accordingly, dismissal with prejudice is warranted.

**IT IS, THEREFORE, ORDERED THAT** the *Motion for Partial Dismissal of Defendant Michelle L. Vieira, as Chapter 7 Trustee for Jasper Pellets, LLC's Third Counterclaim for Defamation and Incorporated Memorandum of Law in Support* filed by

Plaintiff CM Biomass Partners A/S is hereby granted, and the Trustee's Defamation Counterclaim is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/06/2023**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 07/06/2023